IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JASON J. HALL, #252 285, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14-CV-279-WHA |
| | ) | [WO] |
| | ) | |
| KIM THOMAS, COMMISSIONER, | ) | |
| *et al.*,[1] | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I. INTRODUCTION

Plaintiff, a state inmate, filed this 42 U.S.C. § 1983 complaint on April 15, 2014, against defendants  Kim Thomas, the Commissioner of the Alabama Department of Corrections during the period of time relevant to the complaint, and Warden Christopher Gordy, the Warden of the Ventress Correctional Facility ["Ventress"] during the time period relevant to the complaint.[2] This action concerns a dispute over the conditions of confinement to which Plaintiff was subjected

---

[1] Previously, the court dismissed Plaintiff's complaint against Governor Robert Bentley, Senator Cam Ward, and Representative Mike Hubbard. *See* Docs. 7, 11.

[2] The capacity in which Plaintiff brings suit against Defendants is unclear. "[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Thus, with respect to Plaintiff's claims against former Commissioner Thomas in his official capacity, current commissioner Jefferson Dunn is the appropriate defendant. As to the personal or individual capacity claims lodged against defendant Thomas, Thomas remains a proper defendant. *Walton ex rel. R.W. v. Montgomery County Bd. of Educ.*, 371 F. Supp. 2d 1318, 1320 n.1 (M.D. Ala. 2005) (new official substituted for official capacity claim but not for individual capacity claim).

during his confinement at Ventress.[3]  Plaintiff requests declaratory and injunctive relief, damages, and trial by jury.

Defendants filed a special report, supplemental special reports, and supporting evidentiary materials addressing Plaintiff's claims for relief. Docs. 14, 30, 32.  Upon receipt of Defendants' special report, as supplemented, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff that "the court may at any time thereafter and without notice to the parties (1) treat the special report [, supplemental special report,] and any supporting evidentiary materials as a motion for summary judgment." Doc. 17 at 2; *see also* Doc. 33. Plaintiff responded to Defendants' reports, *see* Docs. 21, 26, 25, but his responses do not demonstrate that there is any genuine issue of material fact. The court will treat Defendants' special report, as supplemented, as a motion for summary judgment, and it concludes that this motion is due to be resolved in favor of Defendants.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.  2007) (per curiam); Fed.  R.  Civ.  P.  56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of

---

[3] Since filing this action Plaintiff has been transferred to another state correctional facility in Alabama.

informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See*

*Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

### III. DISCUSSION

**A. Absolute Immunity**

To the extent that Plaintiff lodges claims against Defendants in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the

Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity).

## B.  Declaratory and Injunctive Relief

Plaintiff's request for declaratory and injunctive relief against Defendants is due to be dismissed as moot. Plaintiff is no longer incarcerated at Ventress. *See* Doc. 28. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at Ventress, his request for equitable relief is moot.

## C.  Eighth Amendment Claim

### 1. Standing

To the extent that Plaintiff seeks to assert claims on behalf of other inmates, he lacks standing to do so. Standing is a cornerstone of American jurisprudence on which jurisdiction lies. "[A] litigant may only assert his own constitutional rights or immunities." *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction). "The essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon

which the court so largely depends for the illumination of difficult constitutional questions[.]' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703 7 L.Ed.2d 663 (1962)." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

Standing involves two aspects. The first is the minimum "case or controversy" constitutional requirement of Article III. *Saladin*, 812 F.2d at 690. "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Id.*, citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975). If any element is lacking, a plaintiff's claim is not viable. In addition, the Supreme Court has established several requirements based on prudential considerations. *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations… . Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

Plaintiff generally challenges the conditions of the living quarters of all inmates housed at Ventress and also maintains that the conditions of confinement are "particularly hazardous" to the number of aged and infirm inmates at the facility. Doc. 1 at 3. In accordance with applicable federal law, however, Plaintiff lacks standing to assert the constitutional rights of other persons. *Saladin*, 812 F.2d at 690; *Allen v. Wright*, 468 U.S. 737, 751 (1984). The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person. With respect to the claims arising from alleged violations of other inmates' constitutional rights, Plaintiff is not "asserting [his] … own legal rights and interests [but] rather … the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690. These claims, therefore, entitle Plaintiff to no relief.

### 2. Speculative Claims

Regarding Plaintiff's claims which are based on his fear of conditions, actions, or maladies which could have, but did not, occur during his incarceration at Ventress, such contentions do not warrant constitutional scrutiny. Merely speculative allegations that conditions could subsequently result in constitutional violations or that prison officials may at some time in the future act unfavorably toward an inmate fail to implicate any constitutionally protected interest. *Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (plaintiff's subjective belief that harm may occur provides no basis for relief); *Cotterall*, 755 F.2d at 780 (jurisdiction cannot be premised upon mere speculation); *Carter v. Heard*, 593 F.2d 10 (5th Cir. 1979) (relief is not warranted when "the injury which [plaintiff's] pleadings contemplate is fancied, not real; prospective, not actual; and imagined, not threatened."). Thus, claims based on merely potential or future possibilities are subject to dismissal as these claims are purely speculative and without constitutional implication.

### 3. Deliberate Indifference to Prison Conditions[4]

In his complaint, Plaintiff alleges that Ventress Correctional Facility is overcrowded, that there is inadequate living space because "bunks [are] packed together too closely," and that "the security, sanitation, [and] plum[bing] … are impossible to maintain constitutional requirements[.]" Doc. 1 at 3.  Plaintiff also avers that the living conditions in H Dorm, where Plaintiff was housed during the period that is relevant to this lawsuit, are "unsanitary" due to broken and unscreened windows that "creat[e] a serious problem with mosquitos, flies and countless other insects," and "[o]ld and filthy cotton mattresses" that cause "the spread of contagious diseases and body lice" and scabies.  *Id.*  In addition, Plaintiff asserts that there is "inadequate" heating and that "broken and/or outdated smoke detectors … are totally inadequate."  *Id.*  Plaintiff claims that Defendants Thomas and Gordy acted with deliberate indifference in violation of the Eighth Amendment regarding the alleged unsafe or unsanitary conditions at Ventress.  *Id.*  Plaintiff sues Thomas and Gordy in their individual capacities.

Thomas and Gordy raise qualified immunity as a bar to the Plaintiff's Eighth Amendment deliberate indifference claims.  Doc. 14 at 2, 13-14.  "Qualified immunity is an immunity from

---

[4] To the extent that Plaintiff raises additional allegations of constitutional violations in his opposition which were not affirmatively pled in his complaint, under well-settled law, Plaintiff may not "amend" his complaint through his opposition by raising new claims. *See Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage."). The court, therefore, addresses Plaintiff's conditions claim as alleged in the complaint, and considers the facts alleged only to the extent that they support this claim. *See Chavis v. Clayton Cnty. Sch. Dist.,* 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

suit rather than a mere defense to liability."[5]   *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal marks and citation omitted).   Therefore, qualified immunity offers complete protection for a government official—provided that the official was performing discretionary functions and has been sued in his individual capacity—if the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "Whether an official is entitled to qualified immunity is an issue of law." *Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990).

If a plaintiff fails to show that a governmental official sued in his or her individual capacity violated a constitutional right and that the right was clearly established at the time of the violation, then the government official must be granted qualified immunity.   *See Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).   The qualified immunity entitlement will fail only "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'"   *Harlow*, 457 U.S. at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)) (emphasis removed).

---

[5] "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible."   *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal marks and citation omitted).   "A district court's refusal to address claims possibly barred by qualified immunity effectively denies defendants immunity from suit on those claims."   *GJR Investments, Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), *and Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).   Thus, when a defendant raises qualified immunity, a district court must address the merits of qualified immunity even if a plaintiff's claims otherwise fail on their merits.   *See, e.g.*, *Collins v. Sch. Bd. of Dade Cty., Fla.*, 981 F.2d 1203, 1204 (11th Cir. 1993) ("Defendants are entitled to immediate appeal when a district court denies their motion for summary judgment based on qualified immunity" or reserves ruling on qualified immunity at summary judgment.) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990)).

Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.  The qualified immunity analysis employs "an objective reasonable standard, giving a government agent the benefit of the doubt unless his actions were so obviously illegal in the light of then existing law that only an official who was incompetent or who knowingly was violating the law would have committed them."  *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395-96 (11th Cir. 1994)).  Courts "generally accord ... official conduct a presumption of legitimacy." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991).

It is undisputed that Defendants Thomas and Gordy were acting within their discretionary authorities as to Plaintiff's claims; those claims are contingent upon each defendant's authority to act in an official capacity to control the conditions at Ventress and their alleged failure to do so in a constitutionally adequate manner.  *E.g.*, Doc. 14 at 13 ("It is undisputed that the named Defendants acted within the line and scope of their authority[.]"); Doc. 35 at 3 (Plaintiff argues that Defendant Thomas is required to cause Alabama's prisons to comply with constitutional standards); *id.* at 4 (Plaintiff argues that Defendant Gordy is responsible for management of the conditions at Ventress).  Once a defendant has raised qualified immunity and has shown that his actions were within the scope of discretionary authority, the burden shifts to a plaintiff to overcome the defense.  *See Cottone v. Jenne*, 326 F.3d 1352, 1357–58 (11th Cir. 2003); *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988).

In the present case, Plaintiff must present evidence that Thomas or Gordy acted with deliberate indifference in violation of the Eighth Amendment with regard to the alleged conditions at Ventress.  *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also* Doc. 1 at 3 (Defendants acted

10

with "deliberate indifference … as they systematically violate[d] [the plaintiff's] clearly established right to be free from cruel and unusual punishment.").  A plaintiff's burden is high in a deliberate indifference case, but it is not insurmountable.

For a plaintiff to demonstrate an Eighth Amendment deliberate indifference violation regarding conditions of confinement, the Supreme Court has held that

> a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious …; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities[.] For a claim … based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that *only the unnecessary and wanton infliction of pain implicates the Eighth Amendment* …. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety[.]

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal marks, citations, and footnote omitted) (emphasis supplied).

A plaintiff must satisfy both an objective and a subjective test.  *Id*.  The objective component requires an inmate to show first that "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-1029 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).   Regarding the subjective component,

> the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference …. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it

11

> outlaws cruel and unusual 'punishments.' ... [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38; *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety .... It is *obduracy and wantonness*, not inadvertence or error in good faith, which characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).  "Merely negligent failure to protect an inmate ... does not justify liability under section 1983[.]" *Brown*, 894 F.2d at 1537.

Viewing the evidence the a light most favorable to the Plaintiff, as the court must do when ruling on a motion for summary judgment, Plaintiff has presented evidence that he made reports to Defendants Thomas and Gordy regarding (1) overcrowded conditions; (2) inadequate living space; (3) unsanitary living conditions due to old, dirty mattresses; (4) inadequate plumbing; (5) disrepair of physical structure; (6) inoperable fire sprinklers; (7) the inadequacy of heating in the H Dorm; (8) the spread of scabies; and (9) insect control. Doc. 1 at 3; Doc. 21-1; Doc. 26. For purposes of the instant motion for summary judgment, the court assumes, without deciding, that Plaintiff reported each of the foregoing conditions to Thomas and Gordy and that those Defendants were aware of the alleged conditions that form the basis of Plaintiff's complaint.  However, Defendants Thomas and Gordy are nevertheless entitled to qualified immunity on Plaintiff's claims because the evidence of record, viewed in Plaintiff's favor, shows that they did not

wantonly disregard the conditions of which Plaintiff complained and, under their direction or supervision, efforts were made to address plaintiff's allegations regarding prison conditions. *See Whitley*, 475 U.S. at 319 (a prison official must wantonly disregard prison conditions for an Eighth Amendment violation to occur); *Pearson*, 555 U.S. at 232 (a defendant is entitled to qualified immunity if a plaintiff fails to demonstrate a constitutional violation.).

There is no evidence before the court that Thomas failed to act or that he acted in a deliberately indifferent manner. To the contrary, Defendant Thomas testified that, while he did not have control over the daily operations at Ventress, he and his subordinates visited all Alabama prison facilities during his tenure as Commissioner "to [e]nsure that they are in compliance with the Administrative Regulations and Constitutional requirements." Doc. 14-1 at 1-2. While Thomas was the Commissioner, prison officials took actions in an attempt to investigate or correct the prison conditions raised in Plaintiff's complaint in the manner discussed below.

Defendant Gordy testified by affidavit, in relevant part, as follows:

Over the years different measures have been taken to add additional housing/living areas. This includes; in 1994, a bay of the Trade School, which was form[erly] used as a furniture refinishing and educational building, was converted into a 200 man dorm. In 2001, four (4) trailers were brought inside the fenced area and remodeled to form a 120 man dorm. In January 2003 the gymnasium was converted into a 200 man dorm.

The buildings and dormitories at Ventress are clean and sanitary. Wardens, Captains, and Line Supervisors (Lieutenants and Sergeants) make routine security inspections to ensure that the living areas and other departments are in compliance with security and cleanliness …. A project has already begun to touch up the painting inside buildings, dorms and outside structures such as benches and signs. There are no "broken" windows in any of the buildings or dorms. Some of the screens in the windows are missing; however, the Maintenance Department is already in the process of replacing all missing screens. There are no visible signs

concerning a "serious problem" with mosquitos, flies or other insects in the dorms at Ventress ….

Routine repairs have been made [to the plumbing] to fix busted pipes, leaks and clogged drains.

Ventress does not have any old filthy mattresses. All of the mattresses at Ventress were either replaced with new mattresses or repaired with a new cover in October and November of 2013. A constant routine check is conducted to ensure the mattresses are not being destroyed by the inmates. Several inmates were medically treated for scabies in October and November of 2013 which lead to the replacing of the mattresses, sanitizing the dorms with a bleach solution and laundering all linen. The complaints have greatly decreased as a result.

All of the sprinklers in the dormitories are operable. Sprinklers in other areas of the facility that were not operable are in the process of being replaced and/or repaired. There are no known or reported problems with the heating or ventilation in the dorms.

Doc. 14-2.  Defendant Gordy's uncontested testimony concerning the actions taken under his direction or supervision at Ventress – which involved investigating or addressing overcrowding, sanitation, security, broken windows,[6] missing screens, insect infestation, plumbing maintenance

---

[6] Plaintiff alleges in his complaint that there were broken windows at Ventress.  Doc. 1.  Plaintiff filed his complaint on April 15, 2014.  *Id*.  On May 28, 2014, Gordy testified by affidavit that there were no broken windows at Ventress. Doc. 14-2. On September 29, 2014, Plaintiff filed an unsworn objection to Defendants' Special Report in which he asserts that Ventress has broken windows, but he does not submit any evidence to support that assertion.  Doc. 35 at 7 ("Most of the windows are broken[.]").  Whether windows are broken at the prison is not material to the disposition of the deliberate indifference claims against Thomas and Gordy.  The relevant inquiry is whether there is evidence that Thomas and Gordy acted with deliberate indifference to broken windows if the court assumes that broken windows represent a safety hazard. Even viewing the evidence in Plaintiff's favor, prison officials regularly conducted safety inspections and ordered repair projects at Ventress. That evidence, along with the Plaintiff's allegation that windows were broken on April 15, 2014, and Gordy's undisputed affidavit testimony that windows were not broken on May 28, 2014, suggests that prison personnel repaired the windows that were allegedly broken when the complaint was filed, even when the facts are viewed in a light most favorable to the Plaintiff.  At a minimum, Plaintiff does not offer evidence to challenge Thomas's testimony that he visited Alabama's prisons to check for violations of the State's standards and Gordy's testimony that it is his practice to conduct security checks at the prison to ensure that the prison is safe and sanitary. Those

and repair, replacing old or dirty mattresses, combating the spread of diseases such as scabies,[7] providing medical treatment to inmates who contracted scabies in the Fall of 2013, and, ensuring fire sprinkler operation – are fatal to Plaintiff's deliberate indifference claim as to those prison conditions at Ventress. The question before the court is not whether Plaintiff's complaints were addressed to his satisfaction, or even to a standard that might be preferred by the court; it is whether defendants acted or failed to act obdurately or wantonly, with a sufficiently culpable state of mind, with regard to the conditions of which Plaintiff complains. The evidence in this case is that they did not.

The remaining issue is Plaintiff's allegation that Thomas and Gordy failed to respond to Plaintiff's assertions that there was no functioning heat in H Dorm. In their filings of record,

---

practices show that Thomas and Gordy were not deliberately indifferent to broken windows at Ventress. In addition, Plaintiff does not offer any evidence to support his allegations that Thomas or Gordy wantonly disregarded broken windows at Ventress.

[7] With regard to Plaintiff's allegations that he contracted scabies, in addition to Gordy's testimony that mattresses were replaced in an effort to control the spread of disease, it is undisputed that Plaintiff received medical treatment for scabies, and plaintiff does not allege that the treatment was insufficient or inadequate. Doc. 32-1 at 1-2. Plaintiff's scabies was successfully treated between September 22, 2013 and October 31, 2013, and the condition has not recurred. *Id.*; *see also* Doc. 30-2 (medical records). There is no evidence that Plaintiff complained of or was treated for scabies at Ventress after October 13, 2013. On August 5, 2014, Plaintiff submitted a "sick slip" on which he reported itching "around [his] knees and thighs again, it appears to be like mange on that part of my skin." Doc. 32-1 at 2. That same day, Plaintiff "was seen in sick call … with dry patches noted to knees[.]" *Id.* Plaintiff was given hydrocortisone cream to be applied daily for thirty days. *Id.* The nurse practitioner who examined and treated Plaintiff on this occasion did not diagnose scabies, and the nurse directed Plaintiff "to contact medical if symptoms develop or worsen." Doc. 30-2 at 26-27. The August 5, 2014, sick slip and treatment notes are the most recent medical evidence of record.

This evidence is consistent with Gordy's undisputed affidavit testimony that efforts were made to sanitize the dorms after prisoners were diagnosed with scabies, to treat scabies cases in October and November of 2013, and that scabies complaints "greatly decreased." Doc. 14-2. The uncontroverted evidence is that Gordy took action to combat scabies after the Fall of 2013.

Thomas and Gordy do not address plaintiff's allegations that they were deliberately indifferent to inadequate heat in H Dorm except for Gordy's general denial in his May 28, 2014 affidavit that there was a problem with the heating systems at Ventress. Doc. 14-2. On July 17, 2014, Plaintiff testified by affidavit that "there has been absolutely no heat or working heating system" in H Dorm. Doc. 21-1 at 2. The parties' fact dispute regarding the heating system in H Dorm, however, is immaterial to Plaintiff's deliberate indifference claims against Thompson and Gordy. The court construes the evidence in Plaintiff's favor and assumes for purposes of summary judgment that the heat never worked while Plaintiff was housed in H Dorm.[8] The court also accepts Plaintiff's undisputed testimony that he had to wear a heavy coat at night to keep warm. *Id*.

However, there is material evidence that, even when viewed in a light most favorable to the Plaintiff, efforts were made by Gordy and other prison personnel to repair the heater in H Dorm. Plaintiff testified in his July 17, 2014, affidavit that he spoke with Gordy about inadequate heat in H Dorm, and Gordy "said that [he] would look into the issue[.]" Doc. 21-1 at 2. Thereafter, according to Plaintiff, maintenance workers "came out to try to fix the heat[.]" *Id.* In other words, the Plaintiff testified that, after he expressed his concerns to Gordy, action was taken in an attempt to repair the heater in H Dorm. Thus, Plaintiff's own testimony is fatal to his deliberate indifference claim with respect to inadequate heat in H Dorm.

---

[8] The Plaintiff filed his complaint in April and a supporting affidavit in July. Doc. 1; Doc. 21-1. There is no information of record to identify the dates that Plaintiff was housed in H Dorm prior to the date when the complaint was filed. Based on the information available to the court, the Plaintiff contends that his conditions of confinement were unsanitary or unsafe because there was no heat in H Dorm during a time period that includes April 15, 2014 – the date of Plaintiff's complaint – and July 17, 2014 – the date of Plaintiff's affidavit.

There is no evidence that Thomas or Gordy wantonly disregarded or were deliberately indifferent to Plaintiff's Eighth Amendment rights regarding the conditions at Ventress that are the subject of Plaintiff's complaint. Thus, Plaintiff has failed to meet his burden of showing that Thomas or Gordy committed a violation of a constitutional right, and Thomas and Gordy are entitled to qualified immunity. *See Hope*, 536 U.S. at 736.

**D**.    **Conspiracy**

Plaintiff claims that Defendants engaged in a conspiracy to violate his constitutional rights regarding the matters about which he complains. Plaintiff does not allege any facts suggestive of conspiracy. Rather, his conspiracy assertion is conclusory and vague and fails to allege that Defendants reached an agreement or a tacit understanding to commit acts in violation of any constitutionally protected right. *See Fullman v. Graddick*, 739 F.2d 553, 556-7 (11th Cir. 1984); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990); *see also Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy). Summary judgment is due to be granted on this claim.

To the extent Plaintiff seeks relief for alleged criminal conspiratorial actions purportedly committed in violation of his constitutional rights as prohibited by 18 U.S.C. §§ 241 and 242 or any other federal criminal statute, he is entitled to no relief. "Title 18 U.S.C. § 241 is a statute that criminalizes conspiracies against a person's rights under the Constitution or laws of the United States. There is no private right of action under this criminal statute… . Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States. The statute does not create a private cause of action."

*Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D. Tex. 1997) (internal quotation marks and citations omitted); *Rockefeller v. United States Court of Appeals Office for Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D. D.C 2003) (plaintiff foreclosed "from asserting claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action. … Therefore, the Court must dismiss the plaintiff's claims that have been brought pursuant to 18 U.S.C. §§ 242 and 371."). Plaintiff is, therefore, precluded from obtaining relief under any federal criminal statutes "because … they do not convey a private right of action" nor do they authorize an individual to initiate criminal proceedings. *Gipson*, 18 F.Supp.2d at 668; *Rockefeller*, 248 F.Supp.2d at 23.

**E.      Claims under 42 U.S.C. §§ 1985 and 1986**

In addition to bringing his claims under 42 U.S.C. § 1983, Plaintiff indicates that he also seeks relief for claimed violations of his constitutional rights under 2 U.S.C. §§ 1985 and 1986. Docs. 1 at 4. To the extent that Plaintiff seeks to proceed under subsection 3 of § 1985, a successful claim requires a plaintiff to prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997). As explained, Plaintiff's allegation of conspiracy is conclusory and vague. The second element requires Plaintiff to "show that the deprivation of rights or privileges occurred as a result of some racial, or … otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Kivisto v. Miller, Canfield, Paddcok and Stone, PLC*, 413 Fed. Appx. 136, 140 (11th

Cir.) (quotation omitted), cert. denied, 132 S.Ct. 577 (2011).  Plaintiff does not allege that Defendants' conduct was "motivated by racial or otherwise class-based invidiously discriminatory animus" as required under § 1985(3). *Burrell v. Board of Tr. of Ga. Military Coll.*, 970 F.2d 785, 794 (11th Cir. 1993). Further, no deprivation of a constitutional or statutory right has occurred so as to satisfy the fourth element of a § 1985(3) claim. Accordingly, Plaintiff claim under § 1985 entitles him to no relief.   The failure to state a claim under § 1985 precludes Plaintiff from stating a claim under § 1986. *Park*, 120 F.3d at 1160. ("The text of § 1986 requires the existence of a § 1985 conspiracy.").

## F.     Claims Arising Under Court Orders or Decrees

Plaintiff appears to argue that Defendants are not in compliance with a previous consent decree ordered by this court regarding overcrowding. He cites *Newman v. Alabama,* 349 F. Supp. 278 (M.D. Ala. 1972), *aff'd*, 503 F.2d 1320 (5th Cir. 1974), claiming that the standards established in that case are not being implemented. Doc. 35 at 12. To the extent Plaintiff  alleges his rights secured under the Constitution have been violated by the state prison system's failure to address overcrowding in accordance with *Pugh v. Locke*, 406 F. Supp. 318 (M.D. Ala. 1976), he is entitled to no relief, as the prior injunctive orders of this court in *Pugh* do not create an independent cause of action.   On December 28, 1988, this court entered an order and memorandum opinion in *Newman v. Alabama*, Civ. Act. No. 3501-N, returning control of Alabama's prisons to officials of the state.   *Pugh* and other pending prison cases in this court were consolidated with *Newman*.   In its memorandum opinion, the court stated:

> There are pending cases in this Court, and presumably in the other district courts in this State, which allege claims directly premised upon violations of the injunctive orders of this Court in this case based on the failure of prison officials to comply

with the precise and specific remedial requirements of these orders even if said orders required action which exceeds the requirements of the Constitution.  At the risk of closing the barn gate after the horse is out, it is the opinion of this Court that such cases, to the extent they were filed on or after December 3, 1984, and seek damages based solely upon violations of this Court's orders, are without merit because as of this December 3, 1984, the prior injunctions were no longer in effect. To the extent that such cases allege a present violation of the Constitution, they may and should proceed to final adjudication on the basis of the requirements of the Constitution.

*Newman v. Alabama*, Memorandum Opinion, December 28, 1988, at 16.  In light of the foregoing, Plaintiff's claims premised upon prior injunctive orders of this court are subject to dismissal, as they fail to state a claim on which relief may be granted.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (Docs. 14, 30, 32) be GRANTED.

2.  Judgment be GRANTED in favor of Defendants.

3.  This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before July 21, 2017**, the parties may file an objection to the Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon

grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 7th day of July, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge